**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY a/s/o
DOUGLAS and MAUREEN MERRITT,                    CIVIL ACTION No. 3:06-CV-2234

      Plaintiffs,                                 (JUDGE CAPUTO)

         v.

HEARTH & HOME TECHNOLOGIES,
INC., et al.,

      Defendants.

## MEMORANDUM

      Presently before the Court are five (5) motions for summary judgement, filed by Defendants (1) CM Mechanical (Doc. 115), (2) Thiessen Plumbing and Heating (Doc. 118), (3) Hearth & Home Technologies, Inc., (Doc. 122), (4) Delfino Insulation Company, Inc. (Doc. 132), and (5) a joint motion by Regent Homes, Inc, Delfino Insulation Company, Inc., Hearth and Home Technologies, Inc., Thiessen Plumbing and Heating, and Combined Energy Services, Inc. (Doc. 124).  Because Plaintiff has not opposed the motions for summary judgment of Hearth & Home, Delfino, or Thiessen and argues only that questions of material fact exist regarding the other Defendants; because Plaintiff bears some responsibility for the spoilation of evidence but did not act in bad faith; because Defendants are somewhat prejudiced by the spoilation of evidence; and because a question of material fact exists regarding the claim against CM Mechanical, these motions will be granted in part and denied in part.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1441.

**BACKGROUND**

**I. Parties and Procedural Background**

Plaintiff New Jersey Manufacturers Insurance Company ("N.J.M.") brings this action as subrogee of Douglas and Maureen Merritt ("the Merritts").  (Defs.' Joint Mot. for Summ. J., Doc. 124; Pl.'s Response to Defs.' Statement of Material Facts, Doc. 139 [hereinafter "Docs. 124 & 139"] ¶ 1.)  This action arises out of a fire that occurred at the Merritts' home on November 27, 2005, approximately three (3) months after they took possession of the home.  (*Id.* ¶ 2; Def. CM's Statement of Material Facts, Doc. 117 & Pl.'s Response to CM's Statement of Material Facts, Doc. 137, [hereinafter "Docs. 117 & 137"] ¶ 16.)  Defendant Regent Homes, Inc. ("Regent") was the general contractor of the Merritts' newly constructed home, which contained a gas-fueled fireplace manufactured by Defendant Hearth & Home Technologies, Inc. ("H&H") and installed by Regent's contractor Defendant Delfino Insulation Company, Inc. ("Delfino").  (Docs. 124 & 139 ¶¶ 4-6.)  Defendant CM Mechanical ("CM") was responsible for the installation of the gas supply throughout the Merritt residence, which was completed before August 2, 2005. (Docs. 117 & 137 ¶ 9.)  Defendant Combined Energy Services Inc. ("CES") and Plaintiff agree that CES supplied propane gas to the Merritts' home and performed a leak test of the home's propane gas system.  (Docs. 124 & 139 ¶ 7.)  CM and Plaintiff agree that on August 4, 2005, the day after the excavation contractor, Del's Diggin, delivered and set the home's propane tank, CES's serviceman, Christopher Roberts, performed a final hookup and leak test of the propane gas system.  (Docs. 117 & 137 ¶¶ 10-11.)  On August 4, 2005, Mr. Roberts disconnected the fireplace and capped the line using a

brass cap.  (*Id*. ¶ 13.)  A final inspection was performed August 11, 2005, resulting in the issuance of a Certificate of Occupancy by Dingman Township. (*Id.* ¶ 15.)

Additionally, Plaintiff's Second Amended Complaint (Doc. 77) alleges that Defendant Thiessen Plumbing and Heating ("Thiessen") supplied, installed, and connected gas pipes to gas fixtures, including the fireplace, and was responsible for installing a manifold with "homeruns" to each gas fixture, under contract with Regent, but Thiessen denies that it installed or connected any gas pipes to any fixtures, including the fireplace, and states that at no time did it install a manifold with "home runs" to any gas fixtures.  (Thiessen's Statement of Material Facts, Doc. 120 ¶¶ 4-5.)

After Plaintiff N.J.M. brought this action in the Court of Common Pleas of Pike County, Pennsylvania, against H&H, Delfino, and Regent, H&H removed the case to this Court.  (*See* Compl., Doc. 1-3; Doc. 1.)  The Defendants filed various cross claims, and Delfino brought Theissen, CM, and CES into the case as third-party defendants.  (*See* Docs. 17, 59, 60.)  Plaintiff was twice granted leave to amend its complaint to add claims against these Defendants.  (Docs. 25, 75.)

Plaintiff's Second Amended Complaint (Doc. 77) brings claims of Negligence (Count I), Strict Liability (Count II), and Breach of Warranty (Count III) against H&H; claims of Negligence (Count IV) and Breach of Warranty (Count V) against Delfino; claims of Negligence (Count VI), Breach of Contract (Count VII), and Breach of Warranty (Count VIII) against Regent; and claims of Negligence against Thiessen (Count IX), CM (Count X), and CES (Count XI).  All Defendants except Regent filed answers to the Second Amended Complaint.  (*See* Docs. 79, 82, 84, 89, 92.)

Defendant Delfino filed cross claims against all other Defendants (Doc. 79) and all Defendants except Regent filed answers to these cross claims (*see* Docs. 80, 83, 91, 95, 102).  H&H filed cross claims against all other Defendants (Doc. 82) and all Defendants except Regent and CES filed answers thereto (*see* Docs. 85, 87, 104).  Thiessen filed cross claims against all other Defendants (Doc. 84) and all Defendants except Regent filed answers thereto (*see* Docs. 86, 88, 96, 103).  CM filed cross claims against all other Defendants (Doc. 89) and all Defendants except Regent filed answers (*see* Docs. 90, 91, 93, 98).  And, CES filed cross claims against all other Defendants (Doc. 92), and all Defendants except Regent filed answers (*see* Docs. 94, 99, 101, 105).

## II. Motions for Summary Judgment

Thiessen moves for summary judgment in its favor, arguing that it did not perform any work with regard to the fireplace.  (Doc. 118.)  H&H moves for summary judgment in its favor, arguing that there is no evidence that the fireplace itself had anything to do with the cause of the fire. (Doc. 122.)  And Delfino moves for summary judgment arguing that the undisputed evidence establishes that Delfino did not install or connect the propane supply line that Plaintiff argues caused the fire.  (Doc. 132.)  Additionally, CM moves for summary judgment in its favor on the basis of spoilation of evidence and alternatively, on the basis that the record lacks evidence of CM's liability.  (Doc. 115.)  And finally, Defendants Regent, Delfino, H&H, Thiessen, and CES filed a joint motion for summary judgment, also based on spoilation of evidence. (Doc. 124.)

The undisputed facts related to these motions are as follows: Plaintiff alleges that the fire originated in an area around the fireplace.  (Docs. 124 & 139 ¶ 10.)  Edward Good investigated the fire on behalf of Plaintiff and generated a report which is included as Exhibit A to Doc. 124.  (*Id.* ¶¶ 11-12.)  During Good's December 1, 2005 inspection, N.J.M.'s investigators had access to all of the fireplace's components, including the propane supply pipes which N.J.M. now maintains caused the fire. (*Id.* ¶ 13, 26.)  Mr. Good testified that he instructed the contractor that N.J.M. retained to repair the home as follows: "don't let the fireplace go in the dumpster."  (*Id.* ¶ 15.)  Mr. Good conceded that he did not have discussions with the contractor about preserving the propane supply pipes or connections leading to the fireplace, and "assumed that [the contractor] would [not] have disconnected any piping that was already threaded into the fireplace, that would stay with the fireplace."  (*Id.* ¶¶ 15-16.)  Mr. Good admitted that no chain of custody existed with regard to the fireplace or any of the piping and component parts.  (*Id.* ¶ 17.)

On April 4, 2006, Plaintiff N.J.M. arranged for its experts, Glen Frederick of National Forensic Consultants, Inc., and Louis Gahagan of Patrick J. McGinley Associates, Inc., to inspect the fireplace and its component parts, as they then existed, in the Merritts' garage.  (*Id.* ¶ 18.)  Glen Frederick notes that the supply piping and component parts, which N.J.M. claims were defective, had not been preserved for inspection or testing; he notes that when the retained supply piping was laid out in its installed configuration, "it was discovered that numerous pipe fittings, couplings, and nipples were not present" and concludes that "many supplied piping components were missing with no explanation as to their disposition."  (*Id.* ¶ 19.)  Mr. Frederick also states

that "a contractor was retained to remove the mechanical components and gas piping associated with the fireplace and the hole in the east wall was sealed.  All removed components and pipe were to be stored on site."  (*Id.* ¶ 20.)  Mark Fuller, Corporate Designee for H&H, but not an expert witness, also testified that he recalled noting that portions of the gas line piping, the gas valve, flex line, and connector to the control valve were missing.  (*Id.* ¶¶ 28-29.)

Douglas Merritt testified that he saw every allegedly defective component part numerous times after the fire. (*Id*. ¶¶ 32-33.)  And it is undisputed that the propane supply piping and component parts which N.J.M. maintains were defective or defectively installed disappeared while N.J.M. had custody or control of that evidence.  (*Id.* ¶ 35.)  But even N.J.M.'s experts never had the opportunity to examine these component parts before they came to be missing.  (*Id.* ¶ 37.)

These motions are fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish

that it is entitled to judgment as a matter of law.  Where, however, there is a disputed

issue of material fact, summary judgment is appropriate only if the factual dispute is not a

genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury

could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of

proving that: (1) there is no genuine issue of material fact; and (2) the moving party is

entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party

may present its own evidence or, where the nonmoving party has the burden of proof,

simply point out to the Court that "the nonmoving party has failed to make a sufficient

showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved

against the moving party, and the entire record must be examined in the light most

favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59

(3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to

the nonmoving party to either present affirmative evidence supporting its version of the

material facts or to refute the moving party's contention that the facts entitle it to judgment

as a matter of law.  *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in

the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888

(1990).  In deciding a motion for summary judgment, "the judge's function is not himself

to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.


## DISCUSSION

### I. H&H, Delfino, and Thiessen's Motions

Plaintiff did not file briefs in opposition to the individual motions for summary judgment filed by Defendants Thiessen (Doc. 118), H&H (Doc. 122), and Delfino (Doc. 132).  Plaintiff filed only its "Omnibus Brief in Support of its Opposition to the Motions for Summary Judgment Filed by CM Mechanical and Jointly by Defendants, Regent Homes, Inc., Delfino Insulation, Inc., Hearth & Home Technologies, Inc., Thiessen Plumbing & Heating, and Combined Energy Services, Inc." (Doc. 141).  Within this brief, which addresses the motions based on the spoilation of evidence doctrine, Plaintiff also includes some arguments regarding the existence of genuine issues of material fact, but even to the extent that Plaintiff's Omnibus Brief may be taken to oppose the individual substantive motions for summary judgment, it argues only that "[t]here exist genuine issues of fact th[at] preclude the granting of summary judgment in favor of CM Mechanical, Regent Homes, Inc. and Combined Energy Services, Inc. in this matter." (Doc. 141, at 16-18.)  At no point does Plaintiff argue that questions of material fact exist that would preclude granting summary judgment in favor of H&H, Delfino, or Thiessen.

Indeed, after discovery, Plaintiff's theory of the cause of the fire is that "a gas leak was caused by improper installation and a failure to inspect this installation."  (Doc. 141, at 8.)  Specifically, Plaintiff's theory is that the gas leak resulted from improper installation

of the propane supply pipe, rather than from any defect in the fireplace itself.  This theory

is based on the opinions of Plaintiff's experts: Glen Frederick opines that the "operation of

the propane gas burner installed in the gas fireplace ignited errant propane gas from a

piping defect resulting in the fire damage," and that "it is reasonable to believe that the

defect to the propane supply pipe was a result of installation."  (Docs. 124 & 139 ¶ 23.)

Likewise, Plaintiff's other expert, Louis Gahagan, opines that the fire "was caused by a

propane fuel leak below and to the left side of the fireplace ... and was caused by the

improper installation of the piping to the unit."  (*Id.* ¶ 24.)  Plaintiff has not put forth

evidence of alternate theories of the cause of the fire.

   Notably, Plaintiff's allegations against H&H and Delfino do not relate to the

connecting pipes whose improper installation Plaintiff now contends caused the fire but

rather to the design and manufacture (H&H) and supply and installation (Delfino) of the

gas-fueled fireplace itself.  Indeed, in arguing that each of the Defendants was not

prejudiced by the loss of the gas pipes and other materials previously connected to the

fireplace, Plaintiff states that while its cause of action against H&H was based in products

liability, Plaintiff concluded after discovery that "no evidence has been presented that

indicates that a product defect nor manufacturing design was a cause of the fire."  (*Id.* at

9.)  Regarding Delfino, Plaintiff points out that Delfino's charges to its general contractor,

Regent, "did not include the actual hook-up of the fireplace to the gas piping" and that

while Delfino admitted to having performed the conversion of the fireplace from natural

gas to propane, it also admitted "that it did not perform any connections from the black

gas piping to the fireplace."  (*Id.* at 14-15.)  Moreover, Delfino points to evidence that it

installed the fireplace on or before May 11, 2005, before the gas lines or hookups that
allegedly were the source of the fire had been installed.  (*See* Dep. of Robert E. Tauss,
former Vice President, Regent Homes, Jan. 11, 2008, Delfino's Ex. C, Doc. 129-2, at
45:9-25.)

Finally, with regard to Thiessen, Plaintiff states, again in the context of arguing that
Thiessen was not prejudiced by the loss of evidence, that while "[t]his defendant was
originally thought to have been responsible for laying down the gas piping" the evidence
in record shows that it actually performed other work and "[n]o other party has produced
any evidence that may have pointed to this defendant as being responsible for the
connection of the fireplace to the gas line."  (Doc. 141, at 14.)

Because neither Plaintiff nor any of the Defendants with cross claims against H&H,
Delfino, and Thissen filed opposition briefs to these parties' individual motions for
summary judgment, because Plaintiff concedes in its omnibus opposition brief that there
is no evidence linking these Defendants to the piping it alleges was the source of the fire,
and because its arguments that the existence of genuine issues of material fact preclude
granting summary judgment are specifically addressed only to Defendants CM, Regent,
and CES, I will grant the motions for summary judgment of Defendants H&H (Doc. 122),
Delfino (Doc. 132), and Thiessen (Doc. 118).  Accordingly, judgment will be granted in
favor of H&H on Counts I, II, and III of Plaintiff's Second Amended Complaint (Doc. 77),
as well as on all cross claims brought against H&H by the other Defendants.  Judgment
will be granted in favor of Delfino on Counts IV and V of Plaintiff's Second Amended
Complaint (Doc. 77) as well as on all cross claims brought against Delfino by the other
Defendants.  Judgment will be granted in favor of Thiessen on Count IX of Plaintiff's

Second Amended Complaint (Doc. 77), as well as on all cross claims brought against Thiessen by the other Defendants.

## II. Spoilation of Evidence

CM (Doc. 115) and all other Defendants (Doc. 124) argue that summary judgment should be granted in their favor because Plaintiff failed to preserve critical evidence, namely, the propane supply piping and component parts.  Under the spoilation of evidence doctrine, "[w]here evidence is destroyed, sanctions may be appropriate, including the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the 'spoilation inference,' ... [which] 'permits the jury to assume that 'the destroyed evidence would have been unfavorable to the position of the offending party.'" *Bowman v. Am. Med. Sys. Inc.*, No. Civ. A. 96-7871, 1998 WL 721079 at *3 (E.D. Pa. Oct. 9, 1998) (quoting *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)).  Other possible sanctions include fines and imposition of attorneys' fees and costs.  *Travelers Prop. Cas. Co. of Am. v. Cooper Crouse-Hinds, LLC, et al.*, No. 05-CV-6399, 2007 WL 2571450, at *4 (E.D. Pa. Aug. 31, 2007) (citing *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005)).

In *Schmid*, the Third Circuit Court of Appeals held that the appropriate sanction depends on the facts and circumstances of each case and laid out a three (3) part balancing test to use when evidence has been lost.  *Schmid*, 13 F.3d at 81.  That test, which was later adopted by the Pennsylvania Supreme Court in *Schroeder v. Com., Dep't of Transp.*, 710 A.2d 23, 27 (Pa. 1998), considers:

> (1) the degree of fault of the party who altered or destroyed the evidence;
> (2) the degree of prejudice suffered by the opposing party; and
> (3) whether there is a lesser sanction that will avoid substantial unfairness
> to the opposing party and, where the offending party is seriously at fault, will
> serve to deter such conduct by others in the future.

*Id.* While these standards are a guide, the decision of which sanction to impose if a party is found liable for spoilation is within the discretion of the district court. *Travelers Prop. Cas. Co.*, 2007 WL 2571450, at *4. In exercising its discretion, however, "a court should resort to the drastic sanction of entering judgment against a spoliating party only when no alternative remedy by way of a lesser, but equally efficient sanction is available." *Id.* (internal quotation marks omitted).

### A. Degree of Fault

In the spoilation of evidence analysis, "[f]ault has two components: responsibility, and the presence or absence of bad faith." *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1270 (Pa. Super. Ct. 2001).

### 1. Responsibility

A party to a law suit, and its agents, have an affirmative responsibility to preserve relevant evidence. *Bowman*, 1998 WL 721079, at *3; *see also Howell v. Maytag*, 168 F.R.D. 502, 505 (M.D. Pa. 1996). A plaintiff, particularly one who was represented by counsel prior to the spoilation, is not relieved of this responsibility merely because the plaintiff did not itself act in bad faith and a third party to whom Plaintiff entrusted the evidence was the one who discarded or lost it. *See Bowman*, 1998 WL 721079, at *1, 4 (dismissing action based on spoilation of evidence even though it was not plaintiff but rather his doctor, acting against plaintiff's express written request, who discarded the

evidence); *Austin v. Nissan Motor Corp. U.S.A.*, Civ. A. No. 95-1464, 1996 WL 117472, at *2 (E.D. Pa. Mar. 12, 1996) (holding plaintiffs at fault for permitting loss of allegedly defective seat back, even though it was discarded by a garage repairing the vehicle rather than by the plaintiffs themselves, "[i]n light of the fact that plaintiffs retained counsel before repairs were begun and that they were fully aware that any potential lawsuit against Nissan would revolve around alleged defects in the driver's side seat"); *Oxford Presbyterian Church v. Weil-McLain Co., Inc.*, 815 A.2d 1094, 1104 (Pa. Super. Ct. 2003) (holding that plaintiff church which stored evidence of fire in storage facility, did not comply with court order or with defendant's early requests for access to the evidence, and later informed defendant's attorney that the storage facility could not locate the evidence, "was responsible for preserving the evidence and was indirectly at fault for not ensuring its preservation").

In cases involving fires, Pennsylvania courts have declined to announce a blanket rule that plaintiffs must always preserve the entire fire scene, *Mount Olivet*, 781 A.2d at 1271 n.6 (citing *Pia v. Perrotti*, 718 A.2d 321, 325 (Pa. Super. Ct. 1998)), but in considering plaintiffs' fault for lost evidence, they have set forth some guidelines:

> At a minimum, if the plaintiff knows that a particular party is potentially responsible, in the absence of exigent circumstances the plaintiff should provide this party with the opportunity to inspect the evidence. ...[I]f the plaintiff's investigation reveals that a particular product may be the cause of the fire, the plaintiffs should preserve the product itself.  If the investigation reveals alternative potential sources of the fire, these alternative sources should be preserved because they present clearly relevant defense evidence. [But], [i]f, on the other hand, the investigations of the plaintiff and independent experts reveal no alternative sources of the fire, the plaintiff may be considered less at fault of failing to preserve the entire fire scene, because there is no clearly relevant defense evidence to preserve (aside from the allegedly-defective product itself).

13

*Id.* at 1271.

Plaintiff here argues that its degree of fault is low, pointing out that its investigator Edward Good did not remove the pipe during his investigation, told the repair contractor's employee to not "let the fireplace go in the dumpster," but instead to put it in the garage, and assumed that because of that instruction, the contractor "wouldn't have disconnected any piping that was actually threaded into the fireplace" either.  (Dep. of Edward Good, Feb. 27, 2008, Ex. 17 to Doc. 140, at 48:8-10, 51:6-24.)

Such actions, however, are substantially similar to those of the plaintiffs in *Bowman, Austin*, and *Oxford Presbyterian Church*, who were held responsible for spoilation.  The fact that Plaintiff's own experts were unable to conduct their inspections before it was discovered that the component parts were missing supports Plaintiff's contention that the loss was not intentional.  But, "[e]ven unintentional destruction, if the result of unreasonable conduct, subjects a party to sanctions."  *Travelers Prop. Cas. Co.*, 2007 WL 2571450, at *5 n.28.  In *Travelers*, the plaintiff "had control over the fixture and failed to provide it to Defendants in a timely manner or to provide Defendants with an opportunity to examine the fixture contemporaneously with its own experts," and the plaintiff's "employees and retained experts failed to take adequate precautions to protect the damaged components while they handled and shipped them."  *Id.* at *5.  The court concluded that plaintiff had "demonstrated, at a minimum, negligence in handling the light fixture and failing to take the steps necessary to preserve evidence such as the damaged lampholders."  *Id.*

14

2. <u>Absence of Bad Faith</u>

In *Travelers*, however, the court held that "a sanction less severe than the entry of judgment is appropriate," and imposed a spoilation inference instruction, even though "Plaintiff took no affirmative steps to ensure their preservation." *Id.* at *5-7.  It did so because the defendants suffered only a "minimal" degree of prejudice and because it did not appear that the components were intentionally destroyed.  *Id.* at 5.

Likewise, in *Schroeder*, the Pennsylvania Supreme Court balanced the responsibility and bad faith prongs of the fault analysis, holding that the fault of a plaintiff who transfers evidence to a third party who loses it does not necessarily entitle the defendant to the most severe sanction, summary judgment, particularly where the transfer was not negligent or in bad faith and there is a dispute of fact concerning the plaintiff's counsel's efforts to secure an understanding with the third party to preserve the evidence.  *See Schroeder*, 710 A.2d at 27.  The court in *Schroeder* did not hold that the plaintiff was without fault, concluding that the plaintiff's action did ultimately lead to the loss of the evidence, but the court held that, in the absence of negligence or bad faith, this fault was not dispositive and the court could not conclude "that Schroeder's fault entitles Appellees to summary judgment."  *Id.*

To this end, Plaintiff submits further evidence regarding the second component of the fault analysis: presence or absence of bad faith.  *See Mount Olivet*, 781 A.2d at 1270. As evidence of its good faith and concern for the preservation of the fireplace, Plaintiff first submits correspondence from Douglas Merritt to Jeffrey Ross, of Crawford and Company, which was working with N.J.M.  The correspondence indicates that Merritt

expressed a desire to have the fireplace removed from his garage because it still smelled of smoke (E-mail from Douglas J. Merritt to Jeffrey Ross, Feb. 24, 2006, Ex. 21 to Doc. 140) but that a few days later, he wrote back to Ross indicating that because N.J.M. had hired another investigator to look into the fireplace, it "[s]eems we have to keep the fireplace for now whether it smells or not."  (Letter from Merritt to Ross, Ex. 22 to Doc. 140.)  This correspondence implies, Plaintiff argues, that in the interim, Plaintiff informed Merritt that he could not remove the fireplace because of the ongoing investigation.  (Pl.'s Omnibus Br. in Opp'n, Doc. 141, at 5.)

Second, Plaintiff submits that it did not interfere with visits to the scene by representatives of Defendants Regent and Delfino before the fireplace was moved.  (*Id.*) Plaintiff states that as part of notifying Defendants of this inspection, "all of the identified potentially liable parties were notified and invited to participate in the said inspection, namely [H&H, Regent, and Delfino]."  (Pl.'s Br. in Opp'n, Doc. 141, at 6.)  Defendants respond that at the time of these initial visits, and indeed at all times before the April 4, 2006 joint inspection at which it was discovered that the component parts were missing, Plaintiff had never notified them of impending claims against them.  (Defs.' Supp. Br., Doc. 142, at 4.)  A similar lack of notice was one of the reasons the *Travelers* court imposed a sanction, though not the most severe one, for spoilation of evidence in that case.

In sum, the evidence suggests some fault on the part of Plaintiff, particularly concerning its responsibility for preserving the evidence, but there is no evidence of bad faith.  The Court will now turn to the question of prejudice.

**B. Degree of Prejudice to Defendants**

1. Plaintiff's Theory of Causation

The legal theory a plaintiff advances is relevant to determining the degree of prejudice to the defendant.  *E.g., Schmid*, 13 F.3d at 79-80; *Bowman*, 1998 WL 721079, at *4 (discussing greater prejudice loss of allegedly defective product causes in malfunction or manufacturing defect products liability cases than in design defect cases). Here, the claims against the remaining Defendants are based in three (3) legal theories: negligence, breach of warranty, and breach of contract, which all share a common element: causation.  *See Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1070 (Pa. 2006) (negligence); *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. Ct. 2000) (breach of contract); *Peters v. Randco, Inc.*, 27 Pa. D. & C.4th 393, 396 (C.P. Erie 1994) (breach of warranty).  Plaintiff's theory of causation is not that the gas piping connected to the fireplace was defective in design, but rather that it was improperly installed, causing a leak of propane gas from that piping which lead to the fire. (Docs. 124 & 139, at 23-24.)

Plaintiff argues that Defendant CES could not be prejudiced by the missing evidence because that evidence "has no bearing on" the allegedly negligent conduct with which Plaintiff has charged CES, namely, first, that its representative Christopher Roberts performed the leak test at a level of pressure ten (10) times below the required pressure, allowing the propane leak to remain undiscovered, leading to the fire, and second, that Roberts improperly "red tagged" the fireplace.   (*See* Doc. 141, at 11-13.)  Nevertheless, these allegations still require Plaintiff to establish that a leak of propane gas from the

piping was indeed the cause of the fire.  It is true that Defendants have not argued that they are prejudiced in their ability to defend against each element of each of Plaintiff's claims, and thus they suffer less prejudice than do defendants in strict products liability cases.  But this fact does not negate the existence of prejudice with respect to the causation element resulting from spoilation of evidence.  *See, e.g.*, *Pia*, 718 A.2d 321 (applying spoilation of evidence doctrine, and finding prejudice, in negligence claim).

Plaintiff also argues that Defendant CM could not be prejudiced by the loss of the piping and component parts because, Plaintiff avers, CM does not dispute Plaintiff's theory of the fire's cause.  Although CM's argument that it was not the party that connected the gas piping to the fireplace (*see* CM's Br. in Supp, Doc. 116, at 7-8) is not prejudiced by the loss of the missing evidence, CM has not waived other arguments in its defense.  In fact, it argues that the spoilation of the evidence in this case prevents it from developing such other arguments, as will be discussed below.

CM's expert report states:

> Although, in the writer's opinion, the fire was caused by a leak in the propane supply to the fireplace and the bottom of the fireplace insert exhibited overheating and soot deposits (See Photo 4), the spoilation of evidence and removal of key piping and components from the residence makes it impossible to confirm the actual source of the leak with any degree of certainty.

(Report of James J. Shields, P.E., Hudson International, Ex. A to CM's Expert Disclosure, Doc. 110, at 5.)  This conclusion in the expert report, particularly in light of the caveat about degree of certainty, does not constitute a concession by CM that a leak in the propane supply was indeed the cause of the fire.  More telling, it does not constitute a concession, or even speak to the claim, that it was negligent installation of the gas piping

18

connected to the fireplace that caused the fire.  Thus, contrary to Plaintiff's arguments, this expert report does not concede all points of disagreement for which the missing evidence has relevance, and therefore it does not preclude a finding that spoilation of the evidence has prejudiced Defendant CM.

2. Other Opportunities to Examine Spoiled Evidence

A defendant suffers less prejudice when he "had ample evidence of the [product's] condition" prior to spoilation, as in *Harley v. Mikita U.S.A., Inc.*, where the defendant's expert had the first opportunity to examine the product and both parties photographed it before the plaintiff examined it and allegedly caused spoilation of evidence.   No. Civ. A. 94-4981, 1998 WL 156973, at *11-13 (E.D. Pa. Apr. 7, 1998).  Here, Plaintiff submits evidence that a Regent representative, Robert Tauss, visited the house approximately two (2) weeks after the fire, without going inside the house, and visited it a second time before the fireplace had been removed, that time going inside the house with the Merritts to look at the damage.  (Dep. of Robert Tauss, Jan. 11, 2008, Ex. B to Pls.' Omnibus Statement of Material Facts, Doc. 140, at 174:1 - 175:15.)

Plaintiff also submits that immediately after the fire, while the fireplace was still in tact, numerous photographs of the scene were taken by Douglas Merritt, the Dingman Township Fire Department, Crawford and Company, Mellon Certified Restoration, and Edward Good.  (Pl.'s Omnibus Statement of Facts, Doc. 140 ¶ 82.)  Plaintiff indicates that these photographs, included in the record here in Plaintiff's Exhibits eighteen (18) through twenty (20), were provided "to all defendants as they became involved in resulting litigation."  (Doc. 141, at 8.)  Plaintiff specifically states that the missing pieces are depicted in five (5) photographs marked as MERRITT-N, MERRITT-U, C&C PHOTO, and

SIU PHOTO SHEET - 11&12, in Plaintiff's Exhibit nineteen (19).  (*See* Doc. 140 ¶ 86.)

The existence of these photographs, which were reviewed and cited in the reports of Regent's and CES's experts, and the opportunity of Regent's agent, Tauss, to photograph the scene before the fireplace was moved militate toward finding a lower degree of prejudice, but only slightly so.  The weight is slight because while Regent's agent had an opportunity to visit and photograph the scene before the evidence came to be missing, his visit occurred, as Plaintiff concedes, before litigation had commenced. (Doc. 141, at 10.)  Although Plaintiff argues that it would have been reasonable for Tauss to assume that the incident could be the subject of litigation, particularly as Regent was the builder of the home, the situation is nonetheless distinguishable from *Harley*, where after the commencement of litigation, the defendant's expert, not merely a non-expert agent of the defendant, was able to both inspect and photograph relevant aspects of the allegedly defective product.  Here, Defendants' experts had to rely on photographs of missing evidence that had been taken by others.  Indeed, CM's expert reports that he did not receive certain photographs, those referenced in Plaintiff's expert Glenn Frederick's report; CM's expert instead cites photographs he took himself after spoilation of the evidence in question.  (Doc. 100, at 1-2.)

Also telling, Defendants' experts each conclude, in spite of the photographs available to them, that the loss of some critical components makes it impossible to reliably determine the fire's cause. (*See* Shields Report, Ex. A to Doc. 110, at 5; Report of T.J. Klem & Assocs., Ex. A to Regent's Expert Disclosures, Doc. 109, at 3 (stating that loss of evidence and failure to perform certain testing after the fire "negates any possibility for a competent determination of fire cause in this matter"); Report of Frank Schwalje, P.E.,

20

Affiliated Engineering Laboratories, Inc., Ex. A to CES's Expert Disclosures, Doc. 112, at 6-7 ("The photographs provided to date do not present sufficient documentation of the fireplace bump-out or associated wall structure above the fireplace to allow for a complete evaluation of the burn patterns or how they were caused.").)

In another case involving loss of evidence from a fire scene, *Oxford Presbyterian Church*, the plaintiff provided the defendant with photographs and videotapes of all the physical evidence that had since been lost, but the Pennsylvania Superior Court held that it "must agree with [defendant] that looking at two-dimensional photographs of [various items] which the church had preserved as relevant to determining the cause and origin of the fire, could not possibly provide the same degree of information that examining the three-dimensional objects would provide."  815 A.2d at 1104-05.  The court therefore held that the defendant was "prejudiced by its inability more effectively to cross-examine the church's expert, and also by its inability to establish a separate theory of cause and origin."  *Id.* at 1105.

Here, there is less prejudice than in *Oxford* because both parties' experts were unable to examine the now-missing physical evidence, and Defendants will not be left to cross examine experts who had access to more evidence than Defendants' experts did. But like in *Oxford*, Defendants are prejudiced in their ability to establish alternate theories of the fire's cause, as discussed below.

3. Prejudice to Defendants' Ability to Advance Alternative Theories of Causation

Regent's expert explains that while there is sufficient evidence to establish the fire's area of origin, there is not sufficient evidence to determine its cause.  (Klem Report, Ex. A

21

to Doc. 109, at 3, 7.)  Specifically, Klem states that:

> there was a significant release of propane when the regulating valve for the fireplace failed.  This will lead to fire growth and spread patterns that may mislead fire investigators if the failure is not properly sequenced.  The release could have been the result of a loss of integrity of the gas supply line, the failure of the regulator, or an assault by a hostile fire.

(*Id.* at 7.)

CES's expert's report likewise examines the conclusions of Plaintiff's experts with an eye toward alternative possible explanations for the burn patterns and fire damage on which Plaintiff's conclusions are based.  (Schwalje Report, Ex. A to Doc. 112, at 5-8.)  But while Schwalje speculates as to these alternative theories of causation, he concludes that based on the evidence, he can do no more than speculate:

> It is the writer's further opinion that due to this spoliation, there is insufficient evidence to establish a precise cause of this occurrence and, accordingly, as per the accepted industry procedures and practices, when there is insufficient evidence to establish a cause to a reasonable degree of scientific certainty and when the investigator is unable to eliminate all potential other causes, the fire should be considered as undetermined.

(*Id.* at 9.)

And as noted above, CM also argues that it is prejudiced by the spoliation of evidence because without access to the missing components, it cannot investigate alternative potential causes of the fire.  Pennsylvania courts have held that the spoliation of evidence doctrine "applies not only to cases where the product is lost or destroyed, but also to cases where alternative potential causes of the accident are lost or destroyed." *Mount Olivet,* 781 A.2d at 1270.  For instance, in *Pia v. Perrotti*, the plaintiff, whose warehouse had burned down, alleged the fire was caused by the defendant's negligence in inadequately tightening the wires in an electrical metering cabinet.  718 A.2d at 325.

The plaintiff preserved the cabinet, but did not preserve other electrical equipment in the area that could not be ruled out as a cause of the fire, and the Pennsylvania Superior Court concluded that the defendant suffered some prejudice as a result.  *Id.* at 324-25. "Appellees were unable to rebut [plaintiff's] theory [of the fire's cause] with evidence of alternative causes because they had no access to the other electrical equipment in the area." *Id.* at 325.

Although the court in *Pia* gave a spoilation inference instruction, it did not grant summary judgment and noted that the prejudice was not as severe "as in those cases in which the allegedly faulty product in a manufacturing defect case disappears" because there, the defendants "were able to examine the object posited by Appellant as the source of the blaze, and to present a defense to the accusation of negligence." *Id.*  In the instant case, on the other hand, not only have Defendants presented evidence, in the form of the opinions of their experts, that they are prejudiced in their ability to present alternative theories of causation, but also, they do not have access to the object posited by Plaintiff as the source of the fire.  In this sense, their prejudice is greater than that in *Pia*.

4. Other Evidence Probative of the Fire's Cause

In *Dansak v. Cameron Coca-Cola Bottling Co., Inc.*, 703 A.2d 489, 495 (Pa. Super. Ct. 1997), the Pennsylvania Superior Court held that even in a case alleging a defect in the particular missing or destroyed product, where prejudice is far more likely than in design-defect cases, the case must nonetheless "be allowed to proceed" if "the plaintiff is able to establish a defect even if the specific product is lost or destroyed."  Noting that "no controlling Pennsylvania authority *mandates* summary judgment whenever the plaintiff

fails to preserve the defective product," the court allowed the plaintiff to proceed and establish a defect "through circumstantial evidence even though the product has been destroyed." *Id.* (citing as persuasive *Gordner v. Dynetics Corp.*, 862 F. Supp. 1303 (M.D. Pa. 1994), where despite spoilation, plaintiff was allowed to proceed with her strict liability claim, relying on circumstantial evidence to demonstrate a manufacturing defect in a machine's pin, which was lost through no party's fault before either party could inspect it).

In this respect, Plaintiff argues that the existence of other evidence of the cause of the fire diminishes the degree of prejudice to Defendants.  Plaintiff argues that its experts, who like Defense experts could not examine the missing components, were still able to examine "the preserved fireplace, burn patterns, photographs of the missing pipe, statements of the Merritts, testimony of witnesses, the age of the house, and several other factors" that were equally available to all parties, and to reach a conclusion, by "a process of elimination," about where and how the fire began.  (Doc. 141, at 7.)  Plaintiff emphasizes that it "has gained no advantage" through the loss of the evidence and argues that even if Defendants dispute its assertion that it can make its case for the fire's cause based on circumstantial evidence, Defendants will be free to challenge the reliability of Plaintiff's experts, cross examine them, and offer the opinions of their own experts that the cause of the fire is indeterminable:  "The equalizer in this scenario will be the fodder that the defendants will have when they cross-examine plaintiff's experts and the opinion by defendants' respective experts that the cause and origin of the fire is 'undetermined.'" (*Id.* at 16.)

24

### C. Lesser Sanctions and Deterrence

As noted above, when evidence has been spoiled, various sanctions are available to courts, and courts should "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *See Schmid*, 13 F.3d at 79 (quoting Jamie S. Gorelick*,* Steven Marzen and Lawrence Solum, Destruction of Evidence, § 3.16, at 117 (1989)).  Regarding Plaintiff's degree of fault, Plaintiff failed to meet its affirmative duty to preserve relevant evidence and was, at the least, indirectly responsible for the loss of the evidence, as in *Oxford Presbyterian*, 815 A.2d at 1104.  On the other hand, there is no evidence of bad faith or intentional loss or destruction of the evidence.  Regarding the degree of prejudice to Defendants, they have suffered less prejudice than the defendants in *Oxford Presbyterian* in that they had no less access to the missing components than Plaintiff's experts did.  On the other hand, they have suffered more prejudice than the defendants in *Pia* because unlike those defendants, they have not been able to examine the pipe components that Plaintiff alleges were the source of the fire.  In both *Oxford* and *Pia*, the Pennsylvania Superior Court affirmed the lower courts' use of "the least damaging penalty, a spoliation charge to the jury," rather than granting summary judgment.  *Pia*, 718 A.2d at 325; *see also Oxford*, 815 A.2d at 1105.

In sum, Plaintiff is somewhat at fault and Defendants have suffered some prejudice.  But in light of Plaintiff's relatively low degree of fault for the loss of the evidence, the fact that Plaintiff's experts did not have access to evidence that Defendants' experts did not, the opportunity Defendants will have at trial to cross-examine Plaintiff's experts and cast doubt upon Plaintiff's theory of the fire's cause, and the fact that

Defendants have not argued that they have been prejudiced in their ability to negate

elements of the claims against them other than causation, the Court finds that the severe

sanction of dismissal of Plaintiff's claims is not appropriate.[1]  Defendants motions for

summary judgment (Docs. 115 & 124) on the basis of spoilation of evidence will therefore

be denied.


**III. Lack of Evidence Regarding Defendant CM**

As an alternative basis for its summary judgment motion, Defendant CM also

argues that the record lacks evidence of its liability for the fire.  (Br. in Supp., Doc. 116, at

7.)  Specifically, CM argues that while Plaintiff's claim against it is based on its alleged

negligence in supplying, installing, and connecting all gas pipes to all gas fixtures,

including the fireplace (*see* Am. Compl., Doc. 77 ¶¶ 72-74), CM "did not connect the gas

pipes to the subject fireplace."  (Answers of CM to Interrogatories Propounded by Delfino

Insulation, Inc., Ex. 6 to Doc. 140 ¶¶ 4, 5, 15-18.)  Instead, CM maintains, it only "provided

the gas pipe to the fireplace and capped the gas pipe at that location as the fireplace had

not been installed at the time CM Mechanical performed its work."  (*Id.*)

The evidence in the record indicates that CM installed the sewer, water, and gas

lines throughout the house, that the invoice for this work is dated August 2, 2005, and that

CM typically provides invoices two (2) weeks after performing work.  (Dep. of Corey Mayo,

Feb. 25, 2008, Ex. 5 to Doc. 140, at 14:23 - 15:22; 26:18 - 27:1; Invoice, Ex. 7 to Doc.

140.)  There is also evidence that while CES installed the propane tank outside and ran

---

[1]     The lesser sanction of a spoilation inference jury instruction is not before
the Court.

the gas lines from the tank to the house, it was CM that installed the gas piping called "black pipe."  (Tauss Dep., Ex. 2 to Doc. 140, at 46:1 - 47:8.)  While CM's owner, Corey Mayo, stated in his deposition that CM's work included "hot water heat, installation of the boiler and the gas piping from somebody's regulator throughout the house, whatever fixtures were necessary," (Corey Mayo Dep., at 14:23 - 15:22), both Corey Mayo and Todd Mayo, who performed work on the house for CM, stated that they did not know at the time of their work that there was or would be a fireplace in the house.  (*Id.* at 17:17 - 18:25; Dep. of Todd Mayo, Feb. 25, 2008, Ex. 8 to Doc. 140, at 25:1-23.)  Corey Mayo stated that on the day he last visited the home during construction, all the sewer, water, and gas lines were already in place, but there was no fireplace present.  (Corey Mayo Dep., at 18:11 - 21:5.)  And Todd Mayo testified that even CM's own interrogatory response, cited above, that CM provided the gas pipe to the fireplace and capped the gas pipe at that location, is inconsistent with his own memory that CM did not even run a pipe to that area.  (Todd Mayo Dep., at 26:15-17; 63:8 - 64:18.)  Todd Mayo further testified that although his company normally made connections from the gas piping to certain appliances, like gas stoves, his company normally did not connect fireplaces to gas piping because "by the time the fireplace is normally being hooked up, it's after we've been there, so our valve would be in the floor to hook up to it."  (Todd Mayo Dep., at 64:19 - 65:13.)

This testimony contradicts the testimony of Robert Tauss that the fireplace was in place, although not yet connected, on or before May 11, 2005.  (*See* Tauss Dep., at 45:9-25.)  A question of fact exists, then, as to whether the fireplace was in place when CM performed its work.  As CM states that it did not connect the black pipe to the fireplace because the fireplace was not yet in the home, a question of fact likewise exists as to

27

whether CM did connect the gas piping to the fireplace, and this question is material to the negligence claim against CM. CM's motion for summary judgment will therefore be denied.

## CONCLUSION

Because no party has opposed the motions for summary judgment of Hearth & Home, Delfino, or Thiessen or pointed to questions of material fact regarding the claims against these Defendants, their motions for summary judgment in their favor (Docs. 115, 118, & 122) will be granted. Because they are no longer parties, their cross claims against the other Defendants (Docs. 79, 82, & 84) will be dismissed as moot. Because Plaintiff bears some responsibility for the spoilation of evidence but did not act in bad faith; because Defendants are somewhat prejudiced by the spoilation of evidence; and because a question of material fact exists regarding the claim against CM Mechanical, both the joint motion for summary judgment based on spoilation of evidence (Doc. 124) and CM's motion for summary judgment based on spoilation of evidence and absence of a question of material fact (Doc. 115) will be denied.

The claims remaining in this case are Plaintiff's claims of negligence (Count VI), Breach of Contract (Count VII) and Breach of Warranty (Count VIII) against Regent; Plaintiff's claims of negligence against CM (Count X) and against CES (Count XI); CM's cross claims against Regent and CES (Doc. 89); and CES's cross claims against Regent and CM (Doc. 92).

An appropriate order follows.

<u>June 25, 2008</u>                                     <u>/s/ A. Richard Caputo</u>
Date                                                   A. Richard Caputo
                                                       United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY a/s/o
DOUGLAS and MAUREEN MERRITT,          CIVIL ACTION No. 3:06-CV-2234

     Plaintiff,                                    (JUDGE CAPUTO)

        v.

HEARTH & HOME TECHNOLOGIES,
INC., et al.,

     Defendants.


## ORDER


     Now, this  25th  day of June, 2008, it is **HEREBY ORDERED** that Defendants'

motions for summary judgment are granted in part and denied in part, as follows:

     (1)    The joint motion for summary judgment filed by Regent Homes, Inc, Delfino

              Insulation Company, Inc., Hearth and Home Technologies, Inc., Thiessen

              Plumbing and Heating, and Combined Energy Services, Inc. (Doc. 124) is

              hereby **DENIED**.

     (2)    The motion for summary judgment of CM Mechanical (Doc. 115) is hereby

              **DENIED**.

     (3)    The individual motions for summary judgment of Thiessen Plumbing and

              Heating (Doc. 118), Hearth & Home Technologies, Inc., (Doc. 122), and

              Delfino Insulation Company, Inc. (Doc. 132) are hereby **GRANTED**.

(4)     Judgment in favor of Hearth & Home Technologies, Inc., is **GRANTED** as to Counts I, II, and III of Plaintiff's Second Amended Complaint (Doc. 77) and as to the cross claims brought by CM Mechanical (Doc. 89) and Combined Energy Services, Inc. (Doc. 92).

(5)     Judgment in favor of Delfino Insulation Company, Inc., is **GRANTED** as to Counts IV and V of Plaintiff's Second Amended Complaint (Doc. 77) and as to the cross claims brought by CM Mechanical (Doc. 89) and Combined Energy Services, Inc. (Doc. 92).

(6)     Judgment in favor of Thiessen Plumbing and Heating is **GRANTED** as to Count IX of Plaintiff's Second Amended Complaint (Doc. 77) and as to the cross claims brought by CM Mechanical (Doc. 89) and Combined Energy Services, Inc., (Doc. 92).

(7)     The cross claims filed against all other Defendants by Thiessen Plumbing and Heating (Doc. 84), Hearth & Home Technologies, Inc., (Doc. 82), and Delfino Insulation Company, Inc. (Doc. 79) are hereby **DISMISSED** as moot.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge